IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**GREG M. REYNOLDS,**

        Plaintiff,

    v.

**PORTLAND STATE UNIVERSITY**

        Defendant.

Case No. 3:14-cv-01733-MO

OPINION AND ORDER

**MOSMAN, J.**,

    Pro Se Plaintiff Greg M. Reynolds alleges violations of his Fourth, Fifth, Sixth, and Fourteenth Amendment rights under 42 U.S.C. § 1983. Defendant Portland State University ("PSU") moves for summary judgment [26] on all of Mr. Reynolds's claims. Mr. Reynolds did not respond in a timely manner and an Order to Show Cause was issued [33]. On May 21, 2015, Mr. Reynold responded to the Order to Show Cause [35] and filed his Response in Opposition to the Motion for Summary Judgment [36]. PSU filed their Reply [37] on June 5, 2015. Because PSU is entitled to immunity under the Eleventh Amendment, and because Mr. Reynolds has failed to identify a genuine issue for trial, I GRANT PSU's Motion for Summary Judgment [26].

## BACKGROUND

    While enrolled as a student at PSU, Mr. Reynolds emailed the Office of Public Defense Services seeking help to appeal a prior felony conviction. Upon being informed of how to request an appellate public defender, Mr. Reynolds responded, "[t]hank you for your attempt to help. I fear the only way to see justice in this case is to walk into a school and open fire." Zerzan Decl. [27] Ex. 1, p. 5. Because Mr. Reynolds had a PSU email address, the official who received his email forwarded it on to the Lane County District Attorney's Office, which in turn,

forwarded it to the Federal Bureau of Investigation and to PSU's Campus Public Safety Office ("CPSO").

A week later, two officers from the Multnomah County Sherriff's Office and two CPSO officers visited Mr. Reynolds home to perform a welfare check. CPSO Officer David Baker approached Mr. Reynolds on his front porch, asked him if they could talk, and Mr. Reynolds agreed. The two spoke about Mr. Reynolds's email and Mr. Reynolds characterized the email as "something [he] shouldn't have" said. Zerzan Decl. [27] Ex. 1, p. 3. Mr. Reynolds explained that while he had considered his statement about walking into a school and opening fire a possibility at the time he made it, he no longer felt that way now because he had "options." *Id*. When asked to elaborate, Mr. Reynolds explained that he had called a counselling hotline, had spoken with PSU's Legal Services about appealing his conviction, and had reached out to PSU's Student Health and Services. Finally, Mr. Reynolds told Officer Baker that he did not own any firearms, but that some of his friends did.

Upon receiving Officer Baker's report of the interaction, PSU's Dean of Student Life determined there was a significant concern that Mr. Reynolds could cause substantial harm to others and temporarily suspended him pending a Student Conduct Committee ("Committee") hearing on potential Student Code of Conduct ("Code") violations. PSU provided a "timely warning" to the campus community, as required by the Clery Act, 20 U.S.C. § 1092(f) (2012), and PSU's Dean of Conduct and Community Standards met with Mr. Reynolds to discuss the school's concerns. At the Committee hearing, Mr. Reynolds spoke on his own behalf, admitted he had made the statements that violated the Code, and apologized for his actions. The Committee concluded that Mr. Reynolds had violated the Code by engaging in "behavior that constitutes a possible threat to the health or safety of others," and therefore suspended Mr.

Reynolds for one year. Thomas Decl. [28] Ex. 5. The Committee also required Mr. Reynolds to participate in counseling sessions as a precondition to returning to school.

One month later, CPSO again received notice that Mr. Reynolds made threatening statements regarding potential school violence. In an application for Social Security benefits, Mr. Reynolds wrote,

> "I am so sorry that I did not walk into a school and open fire, at the very least my punishment would fit my crime. Now I have been suspended for over a year so that I can get on disability and get treatment for my mental illness hopefully before I am forced to enter a school and open fire."

Zerzan Decl. [27] Ex. 3, p. 5. CPSO forwarded these comments on to the Office of the Dean of Student Life, who informed Mr. Reynolds the Committee would meet to discuss his new statements. A representative from the Office of the Dean of Student Life met with Mr. Reynolds, but Mr. Reynolds refused to discuss the new statements. Furthermore, Mr. Reynolds did not attend the Committee's hearing on potential Code violations. At the hearing, the Committee decided to expel Mr. Reynolds from campus and notified him in a letter dated November 5, 2012. Thomas Decl. [28] Ex. 8. Mr. Reynolds appealed the Committee's decision to PSU's Vice President, but the appeal was declined.

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Materiality depends on the substantive law and is determined by looking to whether the fact "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The initial burden for a motion for summary judgment is on the moving party to identify the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once that burden is satisfied, the burden shifts to the nonmoving party to demonstrate,

through the production of evidence listed in Fed. R. Civ. P. 56(c)(1) that there remains a "genuine issue for trial." *Celotex*, 477 U.S. at 324. The non-moving party may not rely upon the pleading allegations. *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995) (citing Fed. R. Civ. P 56(e)). All reasonable doubts and inferences to be drawn from the facts are to be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

Before getting to Mr. Reynolds's substantive claims, PSU contends that I should grant summary judgment because Mr. Reynolds claims are barred by the Eleventh Amendment and because PSU is not a proper defendant under 42 U.S.C. § 1983. The Ninth Circuit has explicitly held that PSU "is an arm of the state of Oregon and, therefore, immune from suit [in federal court] under the Eleventh Amendment." *Hagel v. Portland State Univ.*, 237 F. App'x 146, 147–48 (9th Cir. 2007); *see also Rounds v. Or. State Bd. of Higher Educ.,* 166 F.3d 1032, 1035 (9th Cir. 1999) (explaining that claims may instead be brought against individual defendants in their official capacity). Therefore, Mr. Reynolds does not have a valid claim against PSU.

Furthermore, even if Mr. Reynolds were to re-plead his case to allege specific claims against those PSU officials he believes responsible for violating his Constitutional rights, Mr. Reynolds has not met his burden for demonstrating a genuine issue for trial. While Mr. Reynolds alleges violations of his Fourth, Fifth, Sixth, and Fourteenth Amendment rights, he has not produced sufficient evidence to substantiate any of these claims.

First, Mr. Reynolds alleges that PSU violated his Fourth Amendment rights when Officer Baker came on to his property without a warrant to discuss his initial threatening email. However, officers do not violate the Fourth Amendment when they simply approach a home in

an attempt to initiate consensual contact with the occupants. *United States v. Perea-Rey*, 680 F.3d 1179, 1187–88 (9th Cir. 2012). Furthermore, once an individual provides consent, an officer no longer requires a warrant to remain on the individual's property. *United States v. Garcia*, 997 F.2d 1273, 1280–81 (9th Cir. 1993). Consequently, Mr. Reynolds's allegation that Officer Baker violated his Fourth Amendment Rights does not present a genuine issue for trial.

Next, Mr. Reynolds alleges that PSU's suspension and expulsion proceedings violated his right to due process under the Fifth and Fourteenth Amendments.[1] The Supreme Court has recognized a "student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause." *Goss v. Lopez*, 419 U.S. 565, 574 (1975). However, in a case very similar to this one, the Ninth Circuit affirmed this Court's grant of summary judgment to PSU for actions almost identical to their actions here. *See Hagel*, 237 F. App'x at 148. In *Hagel*, PSU suspended a student pending a hearing before the Student Conduct Committee for making threatening comments to both students and members of the Student Conduct Committee. No. CV 04-1770-BR, 2005 WL 1502884, at *2 (D. Or. June 9, 2005) *aff'd in relevant part,* 237 F. App'x 146 (9th Cir. 2007). This Court held—and the Ninth Circuit affirmed—that PSU did not violate the student's right to due process where they sent him notice of the specific allegations pending against him, provided him with opportunities to discuss these allegations with school officials, held hearings before the Student Conduct Committee, and provided him an opportunity to appeal. *Id.* at *6–7. Because PSU has provided all the same opportunities to Mr. Reynolds, and because Mr. Reynolds has not provided any further arguments as to how PSU violated his right to due process, Mr. Reynolds has failed to present a genuine issue for trial.

---

[1] As I have previously recognized PSU as an arm of the State of Oregon, I will technically analyze its obligations under the Fourteenth Amendment, which prohibits "any state [from] depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

Finally, Mr. Reynolds alleges that PSU's investigation and disciplinary proceedings violated his Sixth Amendment rights. The Sixth Amendment provides that "[i]n all criminal prosecutions," the accused shall enjoy certain delineated rights. U.S. CONST. amend. VI. However, Mr. Reynolds provides no evidence that PSU subjected him to a criminal prosecution. Therefore, his claims that PSU violated his Sixth Amendment rights do not provide a genuine issue for trial.

## CONCLUSION

Because PSU is entitled to immunity under the Eleventh Amendment, and because Mr. Reynolds has failed to identify a genuine issue for trial, I GRANT PSU's motion for summary judgment [26]. IT IS SO ORDERED.

DATED this __12th__ day of June, 2015.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge